## Franklin Railway Supply Company *v.* Pittsburg Railways Company, Appellant.

*Contract—Oral contract—Evidence—Case for jury.*

1. In an action on a contract to pay license fees for the use of a patented article, there is sufficient evidence to warrant the submission to the jury of the question of the acceptance by the defendant of the proposition submitted by the plaintiff, where it appears that an official of the defendant requested an official of the plaintiff to state how much would be required as a license fee for the manufacture of the article by other parties than the plaintiff, the owner of the patent; that the official of the plaintiff thereupon stated a price, which the officer of the defendant accepted saying "All right, put it in writing;" that the plaintiff did put it in writing, and the defendant had the article constructed by other parties than the plaintiff, without further written communication; and that the object of the defendant's request to have the proposition in writing was that he might have something to show to the parties who were to construct the article.

*Corporations—Officers—General superintendent—Authority to make contract.*

2. Where the proper officers of a street railway company have authorized a general contract for the construction of a large number of cars, and have delegated to the general superintendent authority to supervise the execution of the contract, the latter may bind the corporation by a contract relating merely to a trifling detail of the construction of the cars.

Argued April 21, 1913. Appeal, No. 24, April T., 1913, by defendant, from judgment of C. P. Washington Co., May T., 1911, No. 383, on verdict for plaintiff in case of Franklin Railway Supply Company v. Pittsburg Railways Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, and PORTER, JJ. Affirmed.

Assumpsit to recover license fees on a patented article. Before McILVAINE, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now, following that suggestion of Mr. Jones',—or that inquiry,—Mr. Beatty got in communication with the plaintiff company, and then and there, as claimed by the plaintiff, became its agent and got a proposition from it, as to the charge it would make for the license to equip these 160 trucks with this journal box; and he gives it to Mr. Jones at his office. The reception of that proposition is where the parties differ. Now, the plaintiff claims that Mr. Beatty made a proposition, an oral proposition there, to Mr. Jones to convey and give these licenses to the Pittsburg Railways Company for the sum of $1.50 a piece, or $960. It claims that Mr. Jones accepted that proposition when he said "all right." In other words, they claim that there was a complete contract,—a proposition on behalf of the plaintiff by Mr. Beatty which was accepted by Mr. Jones, and then that this writing that has been introduced became, as the plaintiff claims, evidence for the benefit of the defendant company as to what the parol contract was, as that company desired to have on their files evidence of what this parol contract was. The plaintiff further claims that Mr. Jones dictated the manner in which he wanted it worded,—had it directed to the company rather than to himself as the first proposition had been made by Mr. Beatty, and that then Mr. Beatty, as the representative of the plaintiff, signed it, thus binding his principal to give this right at this price, and that it was then turned over to Mr. Jones as the evidence of what was the contract that had been made when Mr. Jones said "all right."] [7]

Defendant presented these points:

3. There is not sufficient evidence in this case to sub-

mit to the jury on the question of whether or not the proposition of the plaintiff through E. G. Beatty was ever accepted by the defendant company and the verdict should be for the defendant. *Answer:* Refused. [1]

4. Under all the evidence in this case the verdict should be for the defendant. *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $960. Defendant appealed.

*Errors assigned* were (1, 2, 7) above instructions, quoting them.

*R. W. Irwin,* with him *J. A. Wiley,* for appellant.

*Gervaise G. Martin,* with him *A. B. Johnson* and *McIlvaine, Williams & McCreight,* for appellee.

OPINION BY PORTER, J., July 13, 1913:

The plaintiff in this action of assumpsit seeks to recover upon an alleged parol contract of the defendant company to pay a license fee for the right to use a patented device, a journal box, upon the trucks of certain street cars, for the construction of which it had upon the same day entered into a contract with the J. G. Brill Company. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The first, second and seventh specifications of error raise the two questions involved in this appeal. (1) Was there sufficient evidence to warrant the submission to the jury of the question of the acceptance by the defendant company of the proposition submitted by the agent of the plaintiff? (2) Was there sufficient evidence to warrant a finding that P. N. Jones, the superintendent of the defendant company, had authority to bind the defendant in this transaction? The facts material to the disposition of the first question lie within a narrow compass. The defendant company required a large number of new cars, had advertised for bids for the construction thereof, and

the time for receiving and passing upon such bids had arrived. The specifications for these cars required that they be equipped with special journal boxes, the right to manufacture, sell and use which the plaintiff asserted was covered by a patent to which it held title. The specifications required that the journal boxes should be made of steel, and as the plaintiff company made them only of iron, a question arose as to where the manufacturer who secured the contract could procure the steel boxes, required by the specifications. E. G. Beatty who represented the plaintiff in the transaction, testified that he had a conference upon this subject with P. N. Jones, the superintendent of the defendant company, and who represented it in this matter. He testified that Mr. Jones, the general superintendent of the defendant company, asked him to communicate with the plaintiff company with regard to the matter of royalty on the steel journal boxes and ascertain the amount which they would charge for the license to use the device upon the cars in question. That after communicating with his principal and ascertaining the terms upon which they would authorize him to contract, he had a conversation with Mr. Jones and told him that the plaintiff would allow them to get the steel boxes for these cars made by other parties for a license fee of $1.50 for each box. He testified that Mr. Jones replied to this offer, saying: "All right, put it in writing." He said that Mr. Jones's reason for requesting that the proposition be confirmed by writing was: "So he would have something to show and protect himself in going on the outside for these boxes." He said that Mr. Jones dictated to a stenographer the written form in which he desired to have the proposition submitted, and that he took that form, prepared the written proposition in accordance therewith, signed it and left it at the office of General Superintendent Jones the same day. There was no evidence that the general superintendent of the defendant company ever made any objection to this written proposition or asserted that it varied from the terms of the

oral one.  The defendant company, upon the same day, awarded the contract for the construction of the cars to the J. G. Brill Co., and the plaintiff company subsequently furnished to the J. G. Brill Co. the drawings and models for the journal boxes, and the cars were constructed in the manner contemplated by the contract.  If the jury believed this testimony, it was certainly competent for them to infer that when the agent of the defendant received the oral proposition of the plaintiff and said, "All right, put it in writing," that it was an acceptance of the proposition as made.  The agent of the defendant did not, it is true, say in so many words, "We will pay you a license fee of $1.50 for each box," but although the words which he used may have been slightly ambiguous, their reasonable interpretation plainly indicated an acceptance of the proposition, and the meaning of the words was for the jury.  The request that the proposition be put in writing, taken in connection with the explanation of the reason for the request, cannot be construed as indicating an intention of the parties to leave the matter open for further negotiation.  The oral contract was complete; there was no indication of an intention that some agent of the defendant company must write or sign anything before the company should be bound.  The reason for putting the proposition of the plaintiff in writing was that the defendant desired the evidence of its right to use the device, probably for the purpose of exhibiting it to those who were about to contract for the construction of the cars.

· The authority of P. N. Jones to bind the defendant company in this transaction was, under the evidence in this case, a question for the jury.  Mr. Jones was the general superintendent of the company.  He had prepared the specifications for the construction of the cars in question, which involved the use of these special journal boxes. He did not have authority to bind the company generally by contracts, but the company had authorized the contract for the construction of these cars and had delegated to him authority to supervise the execution of the con-

tract. The president of the defendant company testified at the trial in the court below very fully, frankly and fairly, as to the position occupied by Mr. Jones in this entire transaction. There can be no question, under his testimony, that the authority of Mr. Jones was limited; he could not have entered into a general contract for the purchase or construction of these cars. The purchase of the cars having been authorized by the proper officers of the company, however, the general superintendent had authority to make contracts dealing with the details of construction. The president testified: "Q. He would have no authority to treat with the Brill Company with reference to any changes? A. Oh, any minor changes that were to come up in the construction of the cars, of course, he would have authority, yes, sir. Q. Well now, with whom did the Brill Company then correspond in connection with the execution of this contract? A. Why, it would probably be with Jones. Q. And whatever Jones did then in connection with that correspondence was authorized by your company? A. Yes, sir. Q. Did Jones have any authority to change prices? A. Well, he might in minor things." And again, "Q. Is it your contention that if there were changes made they were not made by you? A. I don't say that; I don't mean to say that; I mean to say if there were any radical changes in that, Mr. Jones would submit it to me." In reply to questions by the court he testified, "Q. That is just the idea; whatever the record shows, you don't have any complaint of the record Mr. Jones made after this matter got under way? A. None whatever. Q. But he had no authority in the initiative? A. No, sir; well, your honor, I would say he had no authority to finally execute a contract. Q. Yes; but after the thing was started, whatever he did you have no complaint now to make that he exceeded his authority in carrying out the contract? A. No, sir. . . . Q. That was the point I was trying to bring out. You were willing to trust Mr. Jones in these minor details that were not required to be submitted to you? A. Absolutely, yes, sir."

We are convinced, in view of this testimony, that it would have been error for the court below to hold, as matter of law, that the general superintendent was without authority to bind the defendant company by this contract, which related to a trifling detail of construction of the cars. The first, second and seventh specifications of error are overruled. The remaining specifications of error refer to the admission of testimony and as no one of them is supported by an exception taken at the trial must all be dismissed.

The judgment is affirmed.